**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BRIAN GUTIERREZ, on behalf of himself and all others similarly situated,** | |
| **Plaintiff,** | |
| **-against-** | **No:** 5:25-CV-0552 (ECC/TWD) |
| **LUCK GROVE CONSTRUCTION INC. and LUCK GROVE TELECOM INC.,** | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| **Defendants.** | |

Brian Gutierrez, individually ("Gutierrez"), and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself, and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.     This lawsuit seeks to recover agreed upon wages, overtime compensation, unlawful deductions, and other damages for Plaintiff and his similarly situated co-workers – tower technicians, survey technicians, construction laborers, pole loading analysis technicians, fiber splicers, and install technicians (collectively "Non-Exempt Laborers") – who work or have worked for Luck Grove Construction Inc. and Luck Grove Telecom Inc. (hereinafter, "Defendants" or "Luck Grove") companywide throughout the United States.

2.     Founded in 2008, Luck Grove is a telecommunications and utilities engineering and construction company aimed at connecting businesses and communities with fast, reliable,

and efficient communications services.[1]

3.      Luck Grove offers services in a variety of telecommunications related areas, namely, land surveys, data collection through field verification, engineering assessments, and post-inspection, fiber-optic network design, engineering, and installation for commercial and residential purposes, and fixed line construction.

4.      Luck Grove has its corporate headquarters at 101 Richmond Avenue, Suite 400, Syracuse, New York 13204 and offices at 610 East Zack Street, Tampa, Florida 33602 and 201 West Walnut Street, Watseka, Illinois 60970.

5.      "Luck Grove Telecom Inc. has experienced rapid growth, expanding into new markets such as the defense sector while maintaining a strong presence in the telecommunications industry. With over 200 employees and offices in Syracuse, Tampa, and the Chicago area, the company has grown its revenue from \$800,000 in 2019 to \$33 million in 2023."[2]

6.      Luck Grove owns and maintains a central website for its business operations located at luckgrove.com. From this central website, users are able to inquire about employment opportunities at Luck Grove job sites around the country and learn of the company's various services.

7.      In order to provide its customers its telecommunications services, Luck Grove employs a significant amount of Non-Exempt Laborers across the United States. For example, Luck Grove has job posts for various positions located in different parts of the country: Syracuse, New York, East Hartford, Connecticut, Columbus, Ohio, Philadelphia, Pennsylvania, Atlanta,

---

[1] *See* About Us, Luck Grove's Website (*available at* https://luckgrove.com/about-us/) (last accessed April 21, 2025).
[2] *See* Media, Luck Grove's Website (*available at* https://luckgrove.com/1078-2/#:~:text=Luck%20Grove%20Telecom%20Inc.%20has,of%20co%2Dfounder%20Joe%20Roberts) (last accessed April 21, 2025).

Georgia.[3]

8.      Luck Grove pays its Non-Exempt Laborers partly on an hourly basis, and then also pays them additional wages labeled as per diem pay for that week's work on the same paycheck. This additional per diem pay is subject to applicable payroll taxes and are included in Non-Exempt Laborers' year end wage amounts on the pay stubs. Moreover, these wages are based upon the hours worked by Non-Exempt Laborers.

9.      Despite being non-exempt employees, Luck Grove has failed to properly pay Non-Exempt Laborers overtime compensation at 1.5 times their regular rate of pay. Specifically, Luck Grove compensated Plaintiff at his regular hourly rate for some of the hours he worked over 40 in a workweek.

10.     Luck Grove also did not factor in *all* compensation it paid Non-Exempt Laborers when calculating the regular rate of pay for purposes of calculating and paying overtime.

11.     In addition to failing to pay overtime pay, Luck Grove also paid Plaintiff and Non-Exempt Laborers less than the number of hours they worked by shaving time off their timesheets. As a result, Luck Grove has significantly underpaid Non-Exempt Laborers for straight time hours and overtime hours worked.

12.     Defendants also maintained a policy and practice whereby they take unlawful deductions from Plaintiff and Non-Exempt Laborers' compensation.

13.     Specifically, Defendants required Plaintiff to pay out of pocket expenses for fuel costs and also deducted income from Plaintiff's wages where there was a report of an employee smoking in the employer-provided housing development.

14.     Defendants failed to provide Plaintiff and Non-Exempt Laborers with proper

---

[3] *See* Indeed, Luck Grove Job Posts, (*available at* https://www.indeed.com/q-luck-grove-telecom-jobs.html?vjk=f7d5ecd2a850b83e) (last accessed April 21, 2025).

annual wage notices as required by the NYLL.

15.     Defendants similarly failed to provide Plaintiff and Non-Exempt Laborers with accurate wage statements pursuant to NYLL § 195(3), as Plaintiff's wage statements failed to show his correct hours worked and rates pay of pay.

16.     Plaintiff relied on his paystubs to ensure that Defendants paid him the correct rate(s) for the correct hours he worked.

17.     Due to Defendants' failure to provide pay stubs that incorrectly listed hours worked and improperly labeled part of his compensation as *per diem* payments, Plaintiff was unable to recognize the underpayment of wages he was suffering. Plaintiff and Non-Exempt Laborers were misinformed about the correct number of hours they worked and their rate(s) of pay, thus they were deprived of the information necessary for reviewing their wages and hours worked, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

18.     Defendants' incorrect wage statements allowed Defendants to continue their unlawful wage and hour scheme without Plaintiff's and Non-Exempt Laborers' awareness that they were being underpaid.

19.     Had Plaintiff and Non-Exempt Laborers been able to see that they were not being lawfully paid via their statement notices, they would have been able to avoid underpayment of their wages. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024) (plaintiff establishes concrete harm if plaintiff can show she "would have avoided some actual harm or obtained some actual benefit if accurate [statements] had been provided"); *see also Van Duser v. Tozzer Ltd.*, No. 23 Civ. 9329 (AS), 2024 WL 4635495, at *5 (S.D.N.Y. Oct. 31, 2024).

20.     Plaintiff's inability to crosscheck his pay statements constitutes concrete harm.

21.     Plaintiff brings this action on behalf of himself and similarly situated current and

former Non-Exempt Laborers who elect to opt in to this action pursuant to the FLSA, specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiff and others similarly situated Non-Exempt Laborers of their lawfully earned wages.

22.     Plaintiff brings this action on behalf of himself and similarly situated current and former Non-Exempt Laborers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the NYLL, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

23.     Plaintiff also brings individual retaliation claims against Defendants in accordance with the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215(1)(a).

## THE PARTIES

### Plaintiff

**Brian Gutierrez**

24.     Brian Gutierrez ("Gutierrez") is an adult who is a resident of Kyle, Texas.

25.     Gutierrez worked for Defendants as a from approximately January 9, 2023 until September 12, 2023.

26.     Gutierrez is a covered employee within the meaning of the FLSA and the NYLL.

27.     A written consent form for Gutierrez is filed with this Complaint.

### Defendants

28.     Defendants jointly employed Plaintiff and similarly situated Non-Exempt Laborers at all times relevant.

29.     Defendants have substantial control over Plaintiff's and Non-Exempt Laborers' working conditions, and over the unlawful policies and practices alleged herein.

30. Defendants are part of a single integrated enterprise that has jointly employed Plaintiff and similarly situated employees at all times relevant.

31. During all relevant times, Defendants' operations are interrelated and unified.

32. During all relevant times, Defendants have applied the same employment policies, practices, and procedures to Plaintiff and all Non-Exempt Laborers.

33. During all relevant times, Defendants have controlled the labor relations of their operations.

34. During all relevant times, Defendants have been Plaintiff's employers within the meaning of the FLSA and NYLL.

**Luck Grove Construction Inc.**

35. Luck Grove Construction Inc. is a domestic business corporation organized and existing under the laws of New York.

36. Luck Grove Construction Inc. may be served through its registered agent, Chad Mutter, at 120 Madison Street, 9th Floor, Syracuse, New York 13202.

37. Luck Grove Construction Inc. was and is a covered employer within the meaning of the FLSA and the NYLL.

38. Luck Grove Construction Inc. has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applicable. Specifically, Luck Grove Construction Inc. is listed as the corporate payor on Gutierrez' pay stubs from Luck Grove.

39. Luck Grove Construction Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Laborers at Luck Grove, including policies, practices, and procedures with respect to payment of wages.

40.     Upon information and belief, at all relevant times, Luck Grove Construction Inc. has had an annual gross volume of sales in excess of $500,000.

41.     At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

**Luck Grove Telecom, Inc.**

Luck Grove Telecom Inc. is a domestic business corporation organized and existing under the laws of New York. It lists its DOS Process address as Luck Grove Telecom Inc., 101 Richmond Avenue, Floor 5, Syracuse, New York 13204.

Luck Grove Telecom Inc. has done business as Luck Grove throughout the relevant time period.

42.     Luck Grove Telecom Inc. was and is a covered employer within the meaning of the FLSA and the NYLL.

43.     Luck Grove Telecom Inc. has maintained control, oversight, and direction over Plaintiff, including timekeeping, payroll, and other employment practices applicable.

44.     Luck Grove Telecom Inc. applies the same employment policies, practices, and procedures to all Non-Exempt Laborers at Luck Grove, including policies, practices, and procedures with respect to payment of wages.

45.     Upon information and belief, at all relevant times, Luck Grove Telecom Inc. has had an annual gross volume of sales in excess of $500,000.

46.     At all times relevant, Defendants have employed more than two employees and its employees utilize goods, equipment, and/or materials that have moved in interstate commerce.

## JURISDICTION AND VENUE

47.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and

1337, and jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

48.     This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to

29 U.S.C. § 216(b).

49.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. §

1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred

in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff brings the First Cause of Action, an FLSA claim, on behalf of:

> All current and former Non-Exempt Laborers employed by Luck
> Grove throughout the United States between May 2, 2022 and the
> date of final judgment in this matter, who elect to opt-in to this
> action (the "FLSA Collective).

51.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate

Plaintiff and the FLSA Collective for their overtime compensation owed.

52.     Consistent with Defendants' policies, patterns, or practices, Plaintiff and the FLSA

Collective were not paid premium overtime compensation for all hours worked beyond 40 per

workweek.

53.     All of the work that Plaintiff and the FLSA Collective have performed has been

assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and

the FLSA Collective have performed.

54.     There are many similarly situated current and former Non-Exempt Laborers who

have been denied overtime pay in violation of the FLSA who would benefit from the issuance of

a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent

to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

55.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendants' records.

56.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiff and the FLSA Collective, the premium overtime wages for all hours worked in excess of 40 hours per workweek.

57.    A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).

58.    Defendants knew or should have been aware that federal law required it to pay Plaintiff and the FLSA Collective overtime compensation for all hours worked in excess of 40 per workweek.

59.    Defendants failed to undertake any diligent review of its wage and hour practices relating to Non-Exempt Laborers.

60.    Defendants did not consult with counsel regarding their wage and hour practices relating to Non-Exempt Laborers.

61.    As a result, Defendants acted willfully due to their reckless disregard of their conduct.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff brings the Second, Third, Fourth, Fifth, and Sixth Causes of Action, NYLL

claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and the class

of persons consisting of:

> All current and former Non-Exempt Laborers employed by Luck
> Grove between September 16, 2018[4] and the date of the final
> judgment in this matter (the "NYLL Class").

63.    The NYLL Class members are so numerous that joinder of all members is

impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

64.    There are more than fifty members of the NYLL Class.

65.    Plaintiff's claims are typical of those claims that could be alleged by any NYLL

Class member, and the relief sought is typical of the relief which would be sought by each NYLL

Class member in separate actions.

66.    Plaintiff and the NYLL Class Members have all been injured in that they have been

uncompensated or under-compensated due to Defendants' common policies, practices, and

patterns of conduct. Defendants' corporate-wide policies and practices affected all of the NYLL

Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful

acts as to each of the NYLL Class members.

67.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class

members and have no interests antagonistic to the NYLL Class members.

68.    Plaintiff is represented by attorneys who are experienced and competent in both

class action litigation and employment litigation and have previously represented many plaintiffs

---

[4] This class period is due to Governor Cuomo's Executive Order that tolled the applicable NYLL statute of limitations during the COVID-19 pandemic for 228 days. *See Brash v. Richards*, 195 A.D. 3d 582, 2021 WL 2213786, 2021 N.Y. Slip Op. 03436 (App. Div. 2d Dep't June 2, 2021) (holding executive order tolled rather than suspended statutes of limitations under New York law).

and classes in wage and hour cases.

69.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

70.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and the NYLL Class members individually and include, but are not limited to, the following:

(a)    Whether Defendants correctly compensated Plaintiff and the NYLL Class agreed upon wages for all of the hours they worked;

(b)    Whether Defendants correctly compensated Plaintiff and the NYLL Class for hours worked in excess of 40 per workweek.

(c)    Whether Defendants deducted out of pocket fuel costs and prohibited activities against the wages of Plaintiff and the NYLL Class;

(d)    Whether Defendants failed to furnish Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by the NYLL; and

(e)    whether Defendants failed to furnish Plaintiff and the NYLL Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFF'S FACTUAL ALLEGATIONS

71.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiff, individually, as follows:

**Brian Gutierrez**

72.     Gutierrez was employed by Luck Grove as a top hand tower technician from approximately January 9, 2023 to September 12, 2023.

73.     Gutierrez worked for Defendants in and around the Syracuse, New York area.

74.     During the course of his employment, Gutierrez regularly worked over 40 hours per week. In this regard, unless he missed time for vacation, sick days, or holidays, or obtained additional weekend shifts, Gutierrez generally Monday through Friday with daily shifts of anywhere between 8 to 14 hours in length, with start times of approximately 7:00 a.m. through 3:00 p.m. to 9:00 p.m. He was also assigned additional weekend shifts based on business needs. Thus, he routinely worked more than 40 hours in a week.

75.     Despite regularly working over 40 hours per week, Luck Grove did not properly pay Gutierrez proper overtime compensation for all hours worked over 40. In this regard, Luck Grove compensated Gutierrez in part on an hourly basis on his paystubs, specifically, $28.00 per hour.

76.     In addition to this hourly wage, Gutierrez would also receive additional wages labeled as *per diem* pay on the same or separate paystub. This additional compensation was subject to taxes, included in his year to date wage amounts, and depended upon the hours worked by Gutierrez.

77.     Defendants tied per diem payments to the number of hours Gutierrez and other employees worked. For instance, Defendants only authorized per diem payments when employees

worked a "sufficient" day's work in their sole discretion. Tying *per diem* payments on the length of shifts worked inherently bases it on hours worked, making it a wage for overtime purposes. *See, e.g., Rule v. S. Indus. Mech. Maint. Co.*, No. 16-cv-01408, 2020 WL 1126179, at *4 (W.D. La. Mar. 6, 2020) (citing Madison v. Re. for Human Dev., Inc., 233 F.3d 175, 187 (3d Cir. 2000)).

78.    Because per diem payments should be considered wages, Luck Grove underpaid Gutierrez by not paying 1.5 times his regular rate of pay, which should have included all per diem payments received.

79.    Additionally, Defendants paid Gutierrez at his straight time hourly rate for some overtime hours worked. For instance, in the workweek ending April 2, 2023, Gutierrez received, Gutierrez was paid straight time for overtime for 8.75 hours of work. See **Exhibit A**, 4/7/2023 Paystub.

80.    Luck Grove also failed to pay Gutierrez all the hours worked due to shaving off recorded hours worked.

81.    In this regard, Plaintiff recalls specifically working approximately 60 hours in a given week, only to find that his wage statement for this period revealed payment for only 35 hours. As a result, Luck Grove failed to pay Guiterrez proper wages for all of the hours he worked.

82.    Defendants made deductions from Gutierrez's compensation for reasons including, out of pocket fuel costs and for reports related to workers smoking at the employer-provided housing.

83.    Defendants failed to furnish Gutierrez with proper annual wage notices, as required by the NYLL.

84.    Defendants also failed to furnish Gutierrez with accurate statements of wages with each payment of wages as required by the NYLL.

85.     As a direct result of Defendants' violations and failure to provide proper wage notices and wage statements, Plaintiff suffered a concrete harm, resulting from his inability to identify the underpayment of wages he was made to suffer. Specifically, without a wage notice properly identifying his true regular rate of pay (which should have included all per diem payments), he was unable to recognize that form of underpayment. Additionally, receiving pay stubs that incorrectly listed hours worked and improperly labeled part of his compensation as *per diem* payments, he was unable to recognize the underpayment of wages he was suffering.

86.     On or around September 6, 2023, Plaintiff emailed Renice Williams, HR Generalist at Luck Grove, about his hours being deducted. In this email, Plaintiff informed Ms. Williams "I have seen hours get deducted . . . I really hate chasing after my check. I have not experienced this with any other company I have ever worked for. Please help me fix this. Brenden only makes it harder for me to work here because of his attitude towards things when I asked about such things." Plaintiff also attached a copy of NYLL § 195 with this formal complaint.

87.     On September 12, 2023, Defendants terminated Plaintiff's employment with no reason provided. This termination letter is signed by Renice Williams.

88.     Defendants terminated Plaintiff's employment due to his protected activity of complaining about owed wages and unlawful deductions.

89.     Any of Defendants' non-discriminatory reasons for termination are pre-text.

90.     Due to Defendant's retaliation, Plaintiff suffered damages, including being out of work, embarrassment, and emotional distress.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff and the FLSA Collective)**

91.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

92.    At all times relevant, Plaintiff and the FLSA Collective were or have been employees, and Defendants were or have been employers of Plaintiff and the FLSA Collective within the meaning of 29 U.S.C. §§ 201 *et seq.*

93.    At all times relevant, Defendants have been employers of Plaintiff and the FLSA Collective, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

94.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

95.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rates of pay – for all hours worked beyond 40 per workweek.

96.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

97.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

98.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the NYLL Class.

99.     Defendants failed to pay Plaintiff and the NYLL Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rates of pay – for all hours worked beyond 40 per workweek.

100.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**New York Labor Law – Failure to pay Agreed Upon Wages**
**(Brought on behalf of Plaintiff and the NYLL Class)**

101.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

102.    The wage provisions of Article 6 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiff and the NYLL Class.

103.    Pursuant to NYLL, Article ¶ 6 § 191(1)(d), Defendants are required to pay Plaintiff and the NYLL Class the wages they have earned in accordance with the agreed terms of their employment, not less frequently than semi-monthly, on regular pay days designed in advance by Defendants.

104.    Defendants failed to pay Plaintiff and the NYLL Class the earned wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations, pursuant to the agree-upon terms of Plaintiff's employment.

105.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants their unpaid agreed upon wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Unlawful Deductions**
**(Brought on behalf of Plaintiff and the NYLL Class)**

106.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

107.    Defendants have unlawfully deducted compensation from Plaintiff and the NYLL Class's wages for out-of-pocket fuel cost expenses and other prohibited types of deductions.

108.    The deductions made from the wages of Plaintiff and the NYLL Class were not expressly authorized in writing by Plaintiff and the NYLL Class, and were not for the benefit of Plaintiff and the NYLL Class.

109.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### FIFTH CAUSE OF ACTION
**Failure to Provide Proper Annual Wage Notices**
**(Brought on behalf of Plaintiff and the NYLL Class)**

110.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

111.    Defendants have failed to supply Plaintiff and the NYLL Class with a proper time of hire wage notice, as required by NYLL, Article 6, § 195(1), in English or in the language identified as their primary language, at the time of hiring and at subsequent wage changes, containing, among other items: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; overtime rate; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

112.    As a result of Defendants' failure to provide, Plaintiff and similarly situated Non-Exempt Laborers were not informed about the wages they earned, and thus they were deprived of the information necessary for reviewing their wages, which was a direct cause for their economic injury, and in fact, regulated in their wages being underpaid.

113.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiff and the NYLL Class are entitled to statutory penalties of fifty dollars for each workday that Defendants failed to provide them with wage notices, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-b).

**SIXTH CAUSE OF ACTION**
**New York Labor Law – Failure to Provide Accurate Wage Statements**
**(Brought on behalf of Plaintiff and the NYLL Class)**

114.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115.    Defendants failed to supply Plaintiff and the NYLL Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

116.    Defendants failed to provide the correct overtime rates of pay on the wage statements provided to Plaintiff and similarly situated Non-Exempt Laborers.

117.    As a result, Plaintiff and the Non-Exempt Laborers were misinformed about the correct wages they earned, and thus they were deprived of the information necessary for reviewing and calculating their wages, which was a direct cause for their economic injury, and in fact, resulted in their wages being underpaid.

118.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiff and the NYLL Class are entitled to statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars, and reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

**SEVENTH CAUSE OF ACTION**
**Fair Labor Standards Act - Retaliation**
**(Brought on behalf of Plaintiff Brian Gutierrez individually)**

119.    Plaintiff Gutierrez realleges and incorporates by reference all allegations in all preceding paragraphs.

120.    Plaintiff engaged in protected activity by emailing Defendants' HR department about missing work time from his paycheck.

121.    Plaintiff suffered an adverse employment action – termination – due to his participation in this protected activity.

122.    At all times relevant, Plaintiff was qualified for his job and performed his work in a reasonably sufficient manner.

123.    Defendants' actions were done in order to punish Plaintiff and/or to otherwise interfere with his attempt to vindicate his rights under the FLSA.

124.    Defendants' actions constitute retaliation in violation of 29 U.S.C. § 215(a)(3) and has made Plaintiff suffer damages, including loss of wages, emotional distress and embarrassment.

125.    Due to Defendants' violation of the FLSA § 215, Plaintiff is entitled to an award of lost wages, liquidated damages, emotional distress damages, and punitive damages, along with reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**New York Labor Law- Retaliation**
**(Brought on behalf of Plaintiff Brian Gutierrez individually)**

126.    Plaintiff Gutierrez realleges and incorporates by reference all allegations in all preceding paragraphs.

127.    Plaintiff engaged in protected activity by emailing Defendants' HR department about missing work time from his paycheck.

128.    Plaintiff suffered an adverse employment action – termination – due to his participation in this protected activity.

129.    At all times relevant, Plaintiff was qualified for his job and performed his work in a reasonably sufficient manner.

130.    Defendants' actions were done in order to punish Plaintiff and/or to otherwise interfere with his attempt to vindicate his rights under the NYLL.

131.    Defendants' actions constitute retaliation in violation of NYLL § 215 and has made Plaintiff suffer damages, including loss of wages, emotional distress and embarrassment.

132.    Due to Defendants' violation of the NYLL § 215, Plaintiff is entitled to an award of lost wages, liquidated damages, emotional distress damages, and punitive damages, along with reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A.    That, at the earliest possible time, Plaintiff be allowed to give notice of this collective action, or that the Court issue such notices, to all Non-Exempt Laborers who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendants across the United States. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Unpaid overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiff Brian Gutierrez as the representative of the NYLL Class and counsel of record as Class Counsel;

E.     Unpaid agreed upon wages, overtime compensation, unlawful deductions, other unpaid wages, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.     Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiff and the NYLL Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.     Statutory penalties of two hundred fifty dollars for each workweek that Defendants failed to provide Plaintiff and the NYLL Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H.     Back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorneys' fees for Plaintiff pursuant to 29 U.S.C. § 215(a)(3), and NYLL § 215(1)(a).

I.     Prejudgment and post-judgment interest;

J.     Reasonable attorneys' fees and costs of the action; and

K.     Such other relief as this Court shall deem just and proper.

Dated:  May 2, 2025
New York, New York

Respectfully submitted,

/s/ Armando A. Ortiz
Armando A. Ortiz

**FITAPELLI & SCHAFFER, LLP**
Armando A. Ortiz
David J. Sack
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

*Attorneys for Plaintiff and the Putative Class and Collective*

<u>FAIR LABOR STANDARDS ACT CONSENT</u>

      1.     I consent to be a party plaintiff in a lawsuit against LUCK GROVE CONSTRUCTION and/or related entities and individuals in order to seek redress for violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b).

      2.     By signing and returning this consent form, I hereby designate FITAPELLI & SCHAFFER, LLP ("the Firm") to represent me and make decisions on my behalf concerning the litigation and any settlement. I understand that reasonable costs expended on my behalf will be deducted from any settlement or judgment amount on a pro rata basis among all other plaintiffs. I understand that the Firm will petition the Court for attorney's fees from any settlement or judgment in the amount of the greater of: (1) the "lodestar" amount, calculated by multiplying reasonable hourly rates by the number of hours expended on the lawsuit, or (2) 1/3 of the gross settlement or judgment amount. I agree to be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

*Brian*

Brian Gutierrez (Oct 25, 2023 17:38 CDT)

Signature

# Brian Gutierrez

Full Legal Name (Print)

# EXHIBIT A

**Luck Grove Construction Inc**
120 Madison Ave
TWR 2 STE 9TH Floor
Syracuse, NY 13202

paylocity

Direct Deposit Advice

| | **Check Date** | **Voucher Number** |
|---|---|---|
| | April 7, 2023 | 156 |

DIRECT DEPOSIT VOUCHER

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| USAA FEDERAL | C | ▇▇▇ | 1,239.72 |
| **Total Direct Deposits** | | | **1,239.72** |

156640  001-130-TRVL  106 156 115      **156640**
**Brian Gutierrez**

Non Negotiable - This is not a check - Non Negotiable

## Non Negotiable - This is not a check - Non Negotiable

### Luck Grove Construction Inc

**Brian Gutierrez**                                                    Earnings Statement

| | | | | | | |
|---|---|---|---|---|---|---|
| Employee ID | **106** | Fed Taxable Income | **1,677.90** | Check Date | **April 7, 2023** | Voucher Number | **156** |
| Location | **001-130-TRVL** | Fed Filing Status | **S** | Period Beginning | **March 27, 2023** | Net Pay | **1,239.72** |
| Hourly | **$28.00** | State Filing Status | **S-0** | Period Ending | **April 2, 2023** | Total Hours Worked | **51.50** |

| Earnings | Rate | Hours | Amount | YTD |
|---|---|---|---|---|
| Holiday | | | | 448.00 |
| Overtime | 42.00 | 2.75 | 115.50 | 1,323.00 |
| Per Diem | | | | 1,640.00 |
| PERDIEM | | 0.00 | 240.00 | 980.00 |
| Regular | 13.80 | 3.00 | 41.40 | 12,649.95 |
| Regular | 28.00 | 45.75 | 1,281.00 | |
| **Gross Earnings** | | **51.50** | **1,677.90** | **17,040.95** |

| Deductions | Amount | YTD |
|---|---|---|
| Business Expenses | | -43.58 |
| New York Voluntary Disability | | 3.00 |
| | | **-40.58** |

| Direct Deposits | Type | Account | Amount |
|---|---|---|---|
| USAA FEDERAL SAVINGS BANK | C | *▇▇▇ | 1,239.72 |
| **Total Direct Deposits** | | | **1,239.72** |

| Taxes | Amount | YTD |
|---|---|---|
| FITW | 220.30 | 1,934.53 |
| MED | 24.33 | 223.31 |
| NY | 81.29 | 726.36 |
| NYPSL-E | 7.63 | 70.06 |
| NYSDI-E | 0.60 | 3.60 |
| SS | 104.03 | 954.85 |
| **Taxes** | **438.18** | **3,912.71** |

| Time Off | Available to Use | Available | Current Earned |
|---|---|---|---|
| Paid Time | 13.57 | 0.00 | 2.31 |